# Exhibit A

**SUPREME COURT OF THE STATE OF NEW YORK**
**NEW YORK COUNTY**

--------------------------------------------------------X

AGNIESZKA CHOMICZ,

                         Plaintiff,

           - against -

BDO USA, P.C.

                        Defendant.

--------------------------------------------------------X

Index No.

**SUMMONS**

Plaintiff designates NEW YORK
County as the place of trial

The basis of the venue is:
LOCATIONS OF INCIDENTS

The Location of Incidents was:
New York, New York 10017

**To the above-named Defendant:**

      **YOU ARE HEREBY SUMMONED** to answer the Complaint in this action, and to serve a copy of your answer, or, if the Complaint is not served with this summons, to serve a notice of appearance on the Plaintiffs' attorneys within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York). In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Dated: New York, New York
       November 19, 2024

                                **PHILLIPS & ASSOCIATES,**
                                **ATTORNEYS AT LAW, PLLC**

                                _/s/_
                                Michelle A. Caiola, Esq.
                                Jonathan Goldhirsch, Esq.
                                Phillips & Associates, PLLC
                                _Attorneys for the Plaintiff_
                                45 Broadway, Suite 430
                                New York, New York 10006
                                T: (212) 248 – 7431
                                F: (212) 901 – 2107
                                mcaiola@tpglaws.com
To:  **BDO USA, P.C.**                     jgoldhirsch@tpglaws.com
      **100 Park Avenue**
      **New York, New York 10017**

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY

---------------------------------------------------------X
AGNIESZKA CHOMICZ,

                       Plaintiff,

- against -

BDO USA, P.C.

                       Defendant.

---------------------------------------------------------X

Index No.

**COMPLAINT**

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

Plaintiff, AGNIESZKA CHOMICZ, by her attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, hereby complains of the Defendant, BDO USA, P.C. ("BDO") upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff brings this lawsuit pursuant to the New York State Human Rights Law, New York State Executive Law §§ 296 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, New York City Administrative Code §§ 8-502(a) *et seq.* ("NYCHRL"). Plaintiff seeks damages under these laws to redress the injuries she has suffered as a result of being discriminated on the basis of her sex/gender, sexually harassed, and retaliated against in response to her complaints of sexual harassment.

## PARTIES

2. BDO is the fifth largest accounting firm in the world.

3. BDO provides tax, audit, and financial consulting to both individuals and businesses.

4. According to its website, BDO has over 110,000 employees across 1,800 offices.

5. In 2020, BDO had $1.8 billion in revenue.

2

6. Defendant BDO is a foreign professional corporation registered to do business in the State of New York.

7. Defendant BDO is headquartered at 330 North Wabash Avenue, Suite 3200, Chicago, IL 60611.

8. At the time, Plaintiff worked at Defendant BDO's New York office, which was located at 100 Park Avenue, New York, NY 10017.

9. From December 16, 2019, to March 17, 2020, Plaintiff worked in-person at the New York office.

10. From March 18, 2020, to June 02, 2021. Plaintiff worked remotely.

11. At all relevant times, Plaintiff was an employee of Defendant BDO.

## MATERIAL FACTS

**Background**

12. Plaintiff is a seasoned tax professional with over twenty years of experience in the accounting industry.

13. Plaintiff worked as a Senior Manager at two of the "Big Four" accounting firms' real estate tax practices – including for over a decade at Ernst & Young ("EY") and for over 2 years at KPMG.

14. At KPMG, Plaintiff was recognized as a high performer and was invited to be a part of the Stacy Lewis Rising Stars Invitational and at the 2019 Leadership Program.

15. Throughout her career, Plaintiff has worked with top private equity real estate funds, REITS, U.S. and foreign investors to ensure compliance with tax obligations and provide advisory services related to real estate investments.

**Plaintiff Is Hired By BDO For Its Developing Real Estate Tax Practice**

16. In Fall 2019, Plaintiff was interviewed by Karl Seemer, Partner, for a Managing Director position.

17. Seemer told Plaintiff that his wife who had worked with Plaintiff at EY had praised her.

18. Seemer told Plaintiff that he was looking for someone with her background to help grow the firm's Real Estate Tax practice.

19. Seemer reassured Plaintiff that although she was being hired as a Managing Director, she would be on "the partner track."

20. Since Plaintiff was a teenager, she had dreamed of making Partner at a public accounting firm, thus, she was enticed by Seemer's offer.

21. Shortly thereafter, Plaintiff accepted the position.

22. On December 16, 2019, Plaintiff started working at BDO as a Managing Director and earned $280,000/year or $5384/week.

**The Pandemic Upended The Real Estate Industry – Months Into Plaintiff's Employment**

23. Plaintiff joined the company just months before the onset of the COVID-19 pandemic, so she was quickly thrown into a challenging work environment.

24. Many of Plaintiff's clients were in the hospitality sector and were suffering financially, thus, her clients were often not making timely payments, asking for fee reductions, or not paying at all.

25. Still, Plaintiff continued to excel in the position and often worked late nights and weekends to ensure her team was profitable, in spite of the challenges her clients faced.

26. Given her exemplary work, Plaintiff was shocked when she received a Spring 2020 performance review of "Needs Improvement," as Seemer had always praised her work.

27. Seemer explained to Plaintiff that BDO would not be giving out bonuses/raises in 2020, thus it had instituted a practice of rating employees with 6 months of experience or less as "needs improvement."

28. Seemer assured Plaintiff that she was doing a great job and that he enjoyed working with her.

**Plaintiff's New Supervisor Began A Campaign of Sexual Harassment**

29. On December 16, 2020, Michael Hurwitz ("Hurwitz") became the Real Estate Practice Leader, and thus, became Plaintiff's supervisor.

30. Hurwitz is man who is at least a decade older than Plaintiff.

31. As Real Estate Practice Leader, Hurwitz had the authority to hire, fire, or affect the terms and condition of Plaintiff's employment, or to otherwise influence the decisionmaker of the same.

32. From the onset of Hurwitz's supervision, he began sending Plaintiff harassing, unwanted messages that were exceedingly personal and went beyond the boundaries of normal workplace conversation.

33. In his initial email to Plaintiff, he emailed at 6:25PM: "Aga – – [I'm here] 25 / 8 / 366 for you – – want to have an introductory call and *whatever tonight??*" … FYI – – I am serious – – [I] would speak to you anytime!" (Emphasis added)

34. Plaintiff was deeply uncomfortable by Hurwitz's email, as she understood to do "whatever" to have a sexual connotation – an inappropriate advance from a supervisor to his subordinate.

5

35. Plaintiff was afraid of rejecting Hurwitz's advances, as he is highly influential in the accounting industry and had a three-decade long career working as a Partner at Marks Paneth LLP, Senior Manager at EY., and Director of Taxation at Acadia Realty Trust.

36. Hurwitz is also known in the industry as he worked as an adjunct professor at New York University's Schack Institute of Real Estate for over 11 years.

37. In fact, Hurwitz would often brag about his pull in the industry and in an January 2021 email urged her: "See what my clients colleagues and students say about me!!...We will work well together – I have your back. 👍 🎵"

38. Plaintiff continued to dodge Hurwitz's advances by only responding to work-related inquiries, however, he continued to incessantly send her harassing messages.

39. Plaintiff often received unwanted personal emails from Hurwitz on late nights and weekends.

40. On January 05, 2021, Hurwitz emailed at 8:02PM: "I am your personal life guard – here to teach, train, assist and work with you. 😊"

41. On Saturday, January 09, 2021, Hurwitz emailed her at 12:05AM that "he needed a picture of [Plaintiff]," hours later he emailed her: "Aga – I party hard/work harder."

42. For example, on January 12, 2021, at 11:42PM, Hurwitz emailed: "Just checking in with you…here for you!!" and on February 24, 2021, at 8:50PM, he emailed: "R u o k Aga?!!"

43. Plaintiff did not respond to these messages, as they were sent beyond work hours and had no work-related purpose.

44. Still, Hurwitz became angered by Plaintiff's refusal to reciprocate or accept his advances.

**Plaintiff Complains of Sexual Harassment, Yet Defendant Fails To Take Remedial Action**

45. On March 25, 2021, after a work-related exchange, Hurwitz goaded Plaintiff: "hey – – we good – – I feel as if we may not be good – – do you want to speak?"

46. Later that day, Hurwitz called Plaintiff to demand to know why she did not respond to his messages.

47. Plaintiff explained that she would only respond to work-related inquiries, as she did not understand the purpose of his personal emails.

48. Plaintiff further complained that his harassing conduct was reminiscent of Governor Andrew Cuomo who had been accused by several women of sexual harassment.

49. Among other things, Governor Cuomo had been accused of hitting on an aide and asking her invasive questions about her sex life.

50. Plaintiff's comparison of Hurwitz's behavior to that of Governor Cuomo was a clear complaint of sexual harassment.

51. In fact, Hurwitz understood this to be a complaint of harassment, as he immediately went on the defensive with a forced apology, stating, in sum and substance: "I'm sorry *you* feel this way."

52. Three days later, on March 08, 2021, Larisa Shevelenko, Human Resources Director ("Shevelenko") reached out to Plaintiff, as Hurwitz had reported her complaint of sexual harassment.

53. Shevelenko told Plaintiff that she wanted to know more about her experiences working with Hurwitz.

54. Plaintiff recounted Hurwitz's uncomfortable, persistent advances and how she asked Hurwitz to cease his inappropriate behavior.

7

55. Afterwards, Shevelenko told Plaintiff, in sum and substance, "Sexual harassment, both actual and perceived, should have no place in workplace."

56. Plaintiff never received any follow-up as to the outcome of her complaint and/or whether any remedial action was taken in response.

57. Upon information and belief, Human Resources failed to investigate or address Plaintiff's complaint.

**Hurwitz Retaliates Against Plaintiff For Complaining of Discrimination**

58. After Plaintiff complained, Hurwitz began retaliating against Plaintiff by undermining Plaintiff's management, reducing her duties, and micromanaging her.

59. Hurwitz began responding to emails that were explicitly addressed to Plaintiff – not allowing Plaintiff an opportunity to address concerns on her projects.

60. Hurwitz also began scheduling meetings with Plaintiff's subordinates and asked them to make changes to her team's projects without her consent.

61. Hurwitz also began flooding Plaintiff's inbox with emails asking for status updates, what her subordinates were working on, and other emails intended to harass and impede Plaintiff from working on her assignments.

62. Hurwitz had not engaged in such behavior prior to her complaints of discrimination.

63. In fact, when Hurwitz joined the team, he promised her he would "take a step back" and allow her the opportunity to manage her team.

64. Given that Hurwitz had previously berated her for not responding to his personal emails, Plaintiff made diligent efforts to respond to his emails.

65. Replying to Hurwitz's emails began to monopolize Plaintiff's workday, as once she responded to one email; he would send several more emails with additional inquiries.

8

66. On March 23, 2021, Plaintiff complained to Seemer about Hurwitz's incessant emails, as it was impeding her ability to meet several deadlines.

67. Seemer promised to address her complaint with Hurwitz.

68. Again, Plaintiff received no follow-up to her complaints.

69. Upon information and belief, Human Resources failed to investigate or address Plaintiff's complaint to Seemer.

70. On March 24, 2021, Hurwitz sent Plaintiff an email: "Can you please call me when you have a free moment? Apparently you have issues with an email or two I sent over? …yes, I did follow up with you regarding some documentation I expected to see."

71. Plaintiff emailed Hurwitz: "If it's okay with you let's have this discussion post 4/15. At this point, I'm trying to survive the busy season."

72. Hurwitz, then, sent Plaintiff a threatening reply with the subject line: "I just got off the phone with Karl [Seemer], that warned: "Aga – – I prefer not to wait till April 15th to resolve the issues you have working with me…"

73. Hurwitz further warned Plaintiff: "I have CC's Larisa [Human Resources Director] and Matthew [Northeast Managing Partner]; hopefully you will find time to speak to them..."

74. Instead of Human Resources addressing her complaints, Defendant failed to take any effective remedial action and instead, allowed her harasser to continue to target her.

75. Plaintiff did not receive any further communications regarding Hurwitz's March 24, 2021, email.

76. Plaintiff worked around the clock – including overnight on several occasions – and completed all of her work prior to her April 15, 2021, deadline.

**Plaintiff Was Terminated Pretextually – Days After Receiving Praise From Hurwitz**

9

77. On May 27, 2021, Hurwitz emailed Plaintiff that her team did "Wonderful!!!"

78. On May 29, 2021, Hurwitz emailed Plaintiff that her team did a "Really nice job 😊 again, workpapers are solid!!!"

79. On May 31, 2023, Hurwitz emailed Plaintiff, that her team did a "Nice job 😊 workpapers are orderly and easy to follow!!!"

80. On May 31, 2023, Marc Leahy, CFO of Enlightened Hospitality Investments and Interim CFO of the Union Square Hospitality Group, emailed Plaintiff: "Thank you so much. You did a masterful job with a tough deadline."

81. On June 02, 2021, Plaintiff received a call from Richard Bayer, New York Office Managing Partner, and Meghan Joans, Regional Senior Manager, Human Resources, and was informed that she was being terminated for performance issues.

82. Defendant's reasoning was clearly pretextual, as days prior to her termination, Plaintiff received positive feedback from Hurwitz and a client.

83. Furthermore, just two days after her termination, Seemer recommended Plaintiff to a recruiter for a position and vouched for her via email: "Again, I have a lot of respect for her and I just think she got caught up in a numbers game here and coming in during a COVID environment did not help."

84. Plaintiff had not asked Seemer to assist her in her job search; yet, unprompted, he gave her contact information to the recruiter.

85. Defendant's assertion that Plaintiff had performance issues is suspect, given Seemer's endorsement of Plaintiff's work just days after her termination.

10

**Harm to Plaintiff**

86. The discrimination and retaliation that Plaintiff has endured has impeded her career trajectory.

87. Despite Plaintiff's two decades of experience in accounting and her interviewing at several public accounting firms, she was unable to find a comparable position.

88. Upon information and belief, Plaintiff has been blacklisted in the public accounting industry, as Hurwitz is well-connected and knows partners at several public accounting firms.

89. Due to her inability to find a comparable position, Plaintiff began working at a private accounting firm.

90. Plaintiff likely will be unable to transition back to public accounting, as private accounting positions are viewed as less prestigious and desirable than public accounting positions.

91. Plaintiff's career has been marred by her termination and she does not believe she will ever be able to fulfill her lifelong dream of becoming Partner at a public accounting firm.

92. Plaintiff has also experienced emotional distress due to the harassing treatment and retaliatory termination.

93. Plaintiff experienced anxiety, depression, loss of appetite, and sleeplessness as a result of Defendant's discriminatory treatment.

94. Plaintiff's emotional and physical distress continues to this day.

95. As a result of the discriminatory acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits, and other compensation which such employment entailed.

11

96. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

97. As a result of the above, Plaintiff has been damaged in an amount in excess of the jurisdiction of the Court.

98. BDO's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

99. As such, Plaintiff demands punitive damages.

## AS A FIRST CAUSE OF ACTION
## DISCRIMINATION UNDER THE NYSHRL

100. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of the Complaint.

101. The New York State Executive Law § 296(1)(a) provides that,

> It shall be an unlawful discriminatory practice: For an employer … because of an individual's … sex, …to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

102. BDO engaged in unlawful employment practices in violation of New York State Executive Law § 296(1)(a) by subjecting Plaintiff to sexual harassment, discriminating against her in terms and conditions of employment, and terminating Plaintiff because of her sex (female).

## AS A SECOND CAUSE OF ACTION
## RETALIATION UNDER THE NYSHRL

103. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of the Complaint.

104. The New York State Executive Law § 296(1) (e) and (h) forbid retaliation for engaging in protected activities.

105. Defendant engaged in unlawful practices in violation of the New York State Executive Law § 296(1)(e) and (h) by retaliating against Plaintiff, reducing her work duties, micromanaging her, undermining her managerial authority, and terminating her for complaining of sexual harassment.

## AS A THIRD CAUSE OF ACTION
## DISCRIMINATION UNDER THE NYCHRL

106. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of the Complaint.

107. The New York City Administrative Code §8-107(1) provides that: "[i]t shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of…gender…to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

108. Defendant engaged in unlawful discriminatory practices in violation of the NYCHRL by subjecting Plaintiff to sexual harassment, discriminating against her in terms and conditions of employment, and terminating Plaintiff because of her gender (female).

## AS A FOURTH CAUSE OF ACTION
## RETALIATION UNDER THE NYCHRL

109. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of the Complaint.

110. The Administrative Code of City of NY § 8-107 (6) forbids retaliation for engaging in protected activities.

111. BDO engaged in unlawful discriminatory practices in violation of the NYCHRL by retaliating against Plaintiff, reducing her duties, micromanaging her, undermining her

13

managerial authority, and terminating her for complaining of sexual harassment.

## JURY DEMAND

112. Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests a judgment against the BDO:

A. Declaring that BDO engaged in unlawful employment practices prohibited by NYSHRL, and the NYCHRL, in that Defendant discriminated and retaliated against Plaintiff on the basis of her sex/gender and retaliated against in response to her complaints of discrimination and sexual harassment;

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from BDO's unlawful discrimination and retaliation and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action;

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the BDO's unlawful employment practices.


Dated: New York, New York
　　　　November 19, 2024

                                  **PHILLIPS & ASSOCIATES,**
                                  **ATTORNEYS AT LAW, PLLC**

By: _____
          Michelle A. Caiola, Esq.
          Jonathan Goldhirsch, Esq.
          Phillips & Associates, PLLC
          *Attorneys for the Plaintiff*
          45 Broadway, Suite 430
          New York, New York 10006
          T: (212) 248 – 7431
          F: (212) 901 – 2107
          mcaiola@tpglaws.com
          jgoldhirsch@tpglaws.com